

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mildred Vélez Cortés, et al.<br><br>    Demandantes-Recurridos<br><br>              v.<br><br><br>Baxter Healthcare Corp. Of Puerto Rico, et al.<br><br>    Demandados-Peticionarios | Certiorari<br><br>2010 TSPR 110<br><br>179 DPR ____ |

Número del Caso: CC-2008-394

Fecha: 1 de julio de 2010

Tribunal de Apelaciones:

                Región Judicial de Carolina – Panel XI

Jueza Ponente:       Hon. Migdalia Fraticelli Torres

Abogados de la Parte Peticionaria:

                Lcdo. José A. Silva Cofresí
                Lcdo. Juan Casillas Ayala
                Lcda. Eva Y. Mundo Sagardía
                Lcdo. Reggie Díaz Hernández

Abogados de la Parte Recurrida:

                Lcdo. Charles S. Hey Maestre
                Lcdo. Luis Amauri Suárez Zayas
                Lcda. Adalina de Jesús Morales

Materia: Despido Injustificado, Discrimen

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mildred Vélez Cortés, et al.

    Demandantes-Recurridos

        v.

Baxter Healthcare Corp. of Puerto Rico, et al.

Demandados-Peticionarios

*Certiorari*

CC-2008-0394

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

**(En reconsideración)**

San Juan, Puerto Rico, a 1 de julio de 2010.

Tenemos ante nos la controversia de si las indemnizaciones por años de servicio o cesantía efectuadas de forma voluntaria por un patrono a sus empleados pueden acreditarse a las indemnizaciones correspondientes bajo la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley de Despido Injustificado, 29 L.P.R.A. sec. 185a *et seq.*, en caso de que los despidos sean determinados como injustificados. Concluimos que aquellas indemnizaciones por años de servicio o cesantía efectuadas con anterioridad a la vigencia de la Ley Núm. 278 de 15 de agosto de 2008, 29 L.P.R.A. sec. 185g, son acreditables a la mesada otorgada bajo

la Ley Núm. 80, *supra*.  Esto, particularmente porque las indemnizaciones por años de servicio o cesantía adelantan los mismos propósitos de la mesada.

## I

Baxter Healthcare Corporation of Puerto Rico, Inc., en adelante, Baxter, es una corporación foránea organizada bajo las leyes del estado de Alaska, que se dedica a la manufactura de productos médicos y farmacéuticos en Puerto Rico. Por su parte, los recurridos trabajaron para Baxter mediante Contrato sin tiempo determinado, comenzando en distintas fechas desde 1961.

El 19 de octubre de 1995, Baxter anunció el cierre de operaciones de la planta de Carolina como parte de un esfuerzo para mejorar su capacidad competitiva.  Las cesantías de los empleados que laboraban en ella se efectuaron en distintas fechas hasta que Baxter decretó su cierre total el 20 de noviembre de 1998 y transfirió la mayoría de la producción de la planta de Carolina a otras plantas que tenía ubicadas en Estados Unidos y en otros municipios de la Isla.

En varios Boletines circulados, Baxter expresó  su entendimiento de que los despidos eran justificados.  No obstante, ofreció a sus empleados una indemnización que denominó "mesada" y determinó la suma que le correspondía a cada empleado valiéndose de la fórmula establecida en la Ley Núm. 80, *supra,* al momento en que tomó la decisión del

cierre. Añadió a dicha suma un diez por ciento (10%).[1] La indemnización así computada sería pagada el último día de trabajo a aquellos empleados que cualificaran.[2] Baxter, además, mantuvo otros beneficios para los empleados cesanteados, tales como la cubierta de plan médico y dental y beneficio de maternidad a toda empleada embarazada al día de su cesantía.[3]

Desde abril del 1999 hasta octubre de 2001 varios empleados incoaron cuatro (4) Demandas contra Baxter por causa de los despidos provocados por el cierre durante el año 1998.[4] Las reclamaciones se basaban en alegados despidos injustificados, represalias y discrimen por razón de edad al amparo de la Ley Núm. 80, *supra*; la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 146 *et seq.*; y la

---

[1] Asimismo, Baxter consideró las posiciones que ocupaban los empleados para el 19 de octubre de 1995, momento del aviso de cierre, al computar la indemnización para evitar que aquellos empleados que se vieron obligados, a consecuencia del cierre, a ocupar una posición de menor salario no se perjudicaran. Apéndice 11 de la Petición de *Certiorari*, pág. 124.

[2] "Todo empleado que renuncie o sea despedido [por ausentismo o acción disciplinaria] no cualifica". Apéndice 11 de la Petición de *Certiorari*, págs. 112-122. No obstante, el empleado podía solicitar ser cesanteado, ya sea por conseguir otro empleo o alguna otra razón, y recibiría los mismos beneficios que los demás empleados despedidos, incluyendo la indemnización. Baxter cesanteaba a quienes se acogían a la cesantía de forma voluntaria y posteriormente recurría a la política de cesantía de la compañía que era "por seniority de acuerdo a la clasificación afectada, excepto en los casos voluntarios". *Íd.* pág. 111.

[3] Apéndice 11 de la Petición de *Certiorari*, págs. 110 y 122.

[4] Las Demandas fueron presentadas el 22 de abril de 1999, el 30 de noviembre de 1999, el 15 de junio de 2000 y el 14 de septiembre de 2001, respectivamente. Posteriormente, las Demandas fueron consolidadas.

Ley Núm. 115 de 20 de diciembre de 1991 (Ley de Represalias contra el Empleado), 29 L.P.R.A. sec. 194 *et seq.*

Luego de las correspondientes argumentaciones, el Tribunal de Primera Instancia dictó una Sentencia Parcial a favor de los recurridos el 19 de diciembre de 2002. Ésta fue enmendada el 28 de abril de 2003 para ser emitida como Sentencia final.[5] En ella el foro de instancia declaró con lugar la reclamación incoada por los recurridos al amparo de la Ley Núm. 80, *supra*; concluyendo que el despido de los empleados había sido injustificado y que, por lo tanto, tenían derecho a que Baxter les pagara la indemnización que disponía la Ley Núm. 80, honorarios y costas, y ordenó a las partes a reunirse y computar las cuantías individuales. Indicó que, de ser necesaria la intervención del tribunal en este último aspecto, se señalaría una vista evidenciaría. Por otra parte, denegó la solicitud de sentencia sumaria que fuera interpuesta por Baxter en cuanto a la reclamación de los recurridos al amparo de la Ley Núm. 100, *supra*.

Así las cosas, Baxter acudió al entonces Tribunal de Circuito de Apelaciones para solicitar que se revisara la determinación del foro de instancia. El tribunal apelativo intermedio revocó el dictamen del tribunal de instancia y

---

[5] El Tribunal de Primera Instancia enmendó su dictamen para convertirlo en una Sentencia final, al añadirle la advertencia de que no existía razón para posponer el dictamen hasta la resolución total del pleito y cumplir así con la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap.III, R. 43.5.

desestimó la Demanda presentada contra Baxter en su totalidad. Concluyó el foro *a quo* que la prueba había demostrado que el cierre de la planta de Carolina fue una decisión en el curso ordinario de los negocios. Por ende, los despidos fueron justificados a tenor con las disposiciones de la Ley Núm. 80, *supra*, ya que la empresa solamente tenía que tomar en consideración a los empleados de Baxter en Carolina y no a la totalidad de sus empleados en las distintas plantas de la Isla al momento del cierre de sus operaciones.

Inconformes, los empleados recurridos acudieron ante este Tribunal. Mediante Sentencia del 30 de junio de 2005, revocamos al tribunal *a quo* y restituimos la Sentencia del Tribunal de Primera Instancia. Determinamos que no había un cierre total, temporero o permanente de la empresa a tenor con el Art. 2 de la Ley Núm. 80, *supra*, sino un traslado de las operaciones de la planta de Carolina a otras plantas de la misma empresa. Expresamos que un cierre total de operaciones implicaba que el patrono descontinuaba de forma absoluta las operaciones de negocio.[6] Por lo tanto, concluimos que los despidos fueron injustificados; que los empleados tenían derecho a la indemnización correspondiente, y reinstalamos la determinación del foro

---

[6] La Ley Núm. 95 de 30 de julio de 2007 enmendó el inciso (d) del Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley de Despido Injustificado, 29 L.P.R.A. sec. 185a *et seq.*, a los efectos de que "en aquellos casos en que la empresa posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos, constituirá justa causa para el despido a tenor con [la sección 185b]".

primario en cuanto a la reclamación bajo la Ley Núm. 80, *supra*. Asimismo, ordenamos que se continuaran los procedimientos en cuanto a las reclamaciones por represalias y discrimen. No obstante, en dicha ocasión no atendimos la controversia que se presenta hoy ante nos: si procedía acreditar la indemnización por años de servicio o cesantía a la indemnización en concepto de mesada bajo la Ley Núm. 80, *supra*.

Devuelto el caso al Tribunal de Primera Instancia, los recurridos instaron una moción en la que peticionaron que se ordenara el pago de la mesada. Informaron que "[d]e los aproximadamente 300 demandantes, estamos de acuerdo en la compensación total de 209 de éstos, mantenemos diferencias respeto a la compensación total de 92 demandantes y hay 6 demandantes que la parte demandada no reconoce […]".[7]

Apuntaron que el conflicto había surgido debido a que Baxter sostenía que solamente debía pagar la diferencia entre la cantidad que les correspondía a los empleados como indemnización bajo la Ley Núm. 80, *supra*, y las sumas de dinero pagadas por la empresa a los trabajadores en ocasión del despido. Sobre el particular, los empleados alegaron que no procedía la pretensión de Baxter ya que ésta nunca había alegado el pago parcial como defensa afirmativa al contestar la Demanda de 10 de mayo de 1999, a la que fueron

---

[7] Apéndice 20 de la Petición de C*ertiorari*, pág. 388.

consolidados los demás casos, de modo que entendían había renunciado al planteamiento.

El 19 de junio de 2006, Baxter se opuso a la solicitud de los recurridos y, a su vez, peticionó que se le acreditara la compensación entregada a los recurridos al pago de la mesada. La empresa arguyó que la cuantía pagada en ocasión del despido fue denominada y notificada a los recurridos como "mesada". Además, sostuvo que dicha compensación poseía las mismas características y el mismo propósito de la indemnización que concedía la citada Ley Núm. 80 por haberse computado a base de los años de servicio y el salario más alto devengado, más un diez por ciento (10%) adicional a lo que requería el estatuto. Argumentó que el no hacer el descuento de la cantidad ya pagada resultaría en una doble compensación y en un enriquecimiento injusto de parte de los recurridos. Por otra parte, Baxter también alegó que no había renunciado a la defensa de pago ya que ésta estaba incluida en la defensa de aceptación como finiquito. Asimismo, fue su contención que la información había surgido del descubrimiento de prueba y de las mociones presentadas sin que fuera refutada por los recurridos.

A su vez, arguyó que, al consolidarse los tres (3) casos siguientes con el pleito original, quedaron incorporadas todas las defensas invocadas en los distintos

casos, como si se tratase de uno solo con una sola alegación responsiva.

Evaluados los argumentos, mediante Sentencia emitida el 3 de octubre de 2006, el Tribunal de Primera Instancia no concedió la acreditación de la compensación pagada por Baxter y ordenó a éste a pagar a cada recurrido "la cantidad total de la indemnización dispuesta en la Ley 80", el pago del interés legal de cinco punto veinticinco por ciento (5.25%), acumulado y computado a partir de abril de 2003 hasta la fecha de su entrega o consignación, así como los honorarios de abogado. Razonó dicho tribunal que la compensación bajo la Ley Núm. 80, *supra*, no estaba limitada por concepto alguno; que las doctrinas y defensas alegadas fueron traídas por primera vez ante su consideración en la etapa de ejecución de Sentencia por lo que habían sido renunciadas por Baxter, y que "con arreglo a la doctrina de la Ley del Caso, los planteamientos relacionados con la reclamación de la Ley 80, la cual fue objeto de adjudicación por [el Tribunal de Primera Instancia], al igual que por el Tribunal Supremo al confirmar la sentencia parcial, no pueden traerse por primera vez, reexaminarse ni modificarse en esta etapa".

Oportunamente Baxter acudió al Tribunal de Apelaciones. El 17 de abril de 2008, el foro apelativo intermedio dictó una Sentencia en la que confirmaba la Resolución del Tribunal de Primera Instancia. Determinó que

de conformidad con la Doctrina de la Ley del Caso, nuestro mandato fue que procedía el pago de la mesada, sin especial acreditación de cuantía alguna. Apuntó que Baxter efectuó el pago por mera liberalidad y no con la intención de cumplir con la legislación social. En cuanto a la imposición de los intereses, el Tribunal de Apelaciones sostuvo la procedencia del pago de intereses de la mesada de los doscientos nueve (209) empleados – cuyas cuantías no están en disputa – a computarse desde el momento que se había dictado la Sentencia Sumaria Parcial. Sin embargo, quedaron excluidos del pago de intereses desde el 28 de abril de 2003 aquellas mesadas sobre las cuales existía una controversia *bona fide*.

Inconforme Baxter acudió ante nos y señaló la comisión de los siguientes errores:

1. **Erró el Tribunal de Apelaciones al enmendar por *fiat* judicial la exclusividad de remedios innata en la Ley de Despido Injustificado y reiterada en innumerables ocasiones por el Tribunal Supremo, provocando así un serio estado de incertidumbre en las relaciones obrero patronales en la isla.**

2. **Erró el Tribunal de Apelaciones al negarse a acreditar a Baxter las cuantiosas sumas ya pagadas en concepto de mesada o por razón de terminación del empleo la cantidad adeudada por dicho concepto apartándose del mandato de la propia ley.**

3. **Erró el Tribunal de Apelaciones al aplicar la Doctrina de la Ley del Caso amparándose en su interpretación del silencio del TPI en su sentencia de 2003 y las expresiones aisladas emitidas en votos particulares al denegarse la reconsideración solicitada por Baxter en el**

**recurso que estuvo previamente ante esta alta curia en el 2005.**

4. **Erró el Tribunal de Apelaciones al ignorar el hecho del pago efectuado por Baxter; sus consecuencias liberadoras y el que ordenar el pago de la mesada sin el descuento correspondiente constituye un remedio excesivo.**

5. **Erró el Tribunal de Apelaciones al imponer el pago de intereses legales antes de que existiese una sentencia ordenando el pago de una suma de dinero específica. Es decir, antes de que existiese una sentencia ejecutable pues el asunto de la cuantía quedó expresamente postergado para una vista evidenciaría.**

El 9 de marzo de 2009 emitimos Sentencia confirmando al Tribunal de Apelaciones por estar igualmente divididos.[8] No obstante, presentada una Moción de Reconsideración por Baxter, acogimos la misma. Procedemos a resolver.

## II

Como expresáramos anteriormente, en la Sentencia de 30 de junio de 2005, este Tribunal no atendió la controversia de si procedía acreditar la indemnización por años de servicio o cesantía a la indemnización en concepto de mesada bajo la Ley Núm. 80, *supra.* Nuestro análisis se limitó a la justificación de los despidos y la reinstalación de la determinación del foro primario en cuanto a la reclamación bajo dicho estatuto. Por lo tanto,

---

[8] Al momento de emitir la Sentencia original este Foro estaba compuesto por el Juez Presidente señor Hernández Denton, el Juez Asociado señor Rivera Pérez, la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez. En dicho momento emitimos Sentencia confirmando al Tribunal de Apelaciones por estar igualmente divididos. La Jueza Asociada señora Fiol Matta emitió opinión de conformidad a la cual se unió el Juez Asociado señor Rivera Pérez. Asimismo, la Juez Asociada señora Rodríguez Rodríguez emitió opinión disidente a la que se unió el Juez Presidente señor Hernández Denton.

*a priori*, no es de aplicación la Doctrina de la Ley del Caso a la controversia ante nos. No estamos reexaminando asuntos ya considerados. *In re: Fernández Díaz*, res. en 21 de agosto de 2007, 172 D.P.R. ___, 2007 T.S.P.R. 162, 2007 J.T.S. 167; *Noriega v. Gobernador*, 130 D.P.R. 919 (1992). En consecuencia, incidió el Tribunal de Apelaciones al determinar lo contrario.

**III**

Por otro lado, los recurridos alegaron que no procedía la pretensión de Baxter ya que ésta nunca alegó el pago total ni parcial de la compensación económica como defensa afirmativa en su contestación a las primeras dos (2) Demandas instadas de modo que había renunciado al planteamiento. Argumentan que ante tal cuadro, Baxter no podía alegar la falta de acreditación de las cuantías pagadas a la mesada adeudada, lo que a su entender fue planteado en enero de 2006.

Examinemos las contestaciones de Baxter a las Demandas presentadas. Ciertamente, en las primeras dos (2) contestaciones Baxter no presentó como defensa el pago de la indemnización provista en la Ley Núm. 80, *supra*. Como hemos señalado,

> [d]e ordinario la consolidación de [los] pleitos no tiene el efecto de que automáticamente las partes y alegaciones de uno se conviertan en partes y alegaciones del otro. *Vives Vázquez v. E.L.A.*, 142 D.P.R. 117, 144 (1996); *Cuadrado v. García*, 99 D.P.R. 154, 157 (1970).

Pero como correctamente señala la decisión del foro apelativo, Baxter alegó y sometió prueba para demostrar que había satisfecho la indemnización "según los criterios adoptados por el legislador en la Ley 80" y por consiguiente, la defensa quedó incorporada como enmienda a las alegaciones.[9] Regla 13.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.13.2. *Ordiozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. 485, 506 (1985); *Srio. del Trabajo v. Vélez*, 86 D.P.R. 585 (1962).

### III

La Ley Núm. 80, *supra*, fue adoptada con el propósito de proteger al obrero que ha sido privado injustificadamente de su trabajo y, a su vez, para desalentar este tipo de despido al imponerle al patrono el pago de la indemnización conocida como la mesada. *Díaz v. Wyndham Hotel Corp.*, 155 D.P.R. 364 (2001). Por medio de la mesada se busca particularmente compensar al empleado por el daño sufrido; proveerle de una suma de dinero que le permita atender sus necesidades básicas en lo que consigue un nuevo empleo, y tal como hemos expresado recientemente, "reconocer el tiempo dedicado por el obrero a la empresa". *Orsini García v. Secretario de Hacienda*, res. 18 de

---

[9] Esto a diferencia de la Regla 13.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.13.1. En *Srio. del Trabajo v. J.C. Penney Co., Inc.*, 119 D.P.R. 660 (1987), determinamos que las enmiendas a las alegaciones son permitidas para clarificar o ampliar la defensa previamente interpuesta a tenor con la Regla 13.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, Regla 13.1. Esto para salvaguardar el carácter sumario del procedimiento.

diciembre de 2009, ___ D.P.R. ___(2009); 2009 T.S.P.R. 190, 2009 J.T.S. ___.

La cuantía a otorgarse como mesada se computa según la fórmula establecida en la Ley Núm. 80, *supra*. El estatuto exigía al momento del despido que:

> Todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, designado en lo sucesivo como el establecimiento, donde trabaja mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono, además del sueldo que hubiere devengado:
>
> (a) El sueldo correspondiente a un mes por concepto de indemnización, si el despido ocurre dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a dos (2) meses si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; el sueldo correspondiente a tres (3) meses si el despido ocurre luego de los quince (15) años de servicio.
>
> (b) Una indemnización progresiva adicional equivalente a una semana por cada año de servicio.
>
> Los años de servicio se determinarán sobre la base de todos los períodos de trabajo anteriores acumulados que el empleado haya trabajado para el patrono antes de su cesantía, pero excluyendo aquéllos que por razón de despido o separación anterior le hayan sido compensados o hayan sido objeto de una adjudicación judicial. 29 L.P.R.A. sec. 185a (2002).

El derecho del empleado despedido sin justa causa a recibir la indemnización así computada es irrenunciable. 29 L.P.R.A. sec. 185i. Es más, "no está sujeta a descuento alguno de nómina incluyendo el del seguro social federal. Cualquier interpretación en contrario desvirtúa el fin

loable que persigue la ley". *Cintrón v. S.K.&F Lab. Co. y otros*, 142 D.P.R. 803, 812-13 (1997). Esto, por no considerársele salario, sino una indemnización. *Íd*. Ahora bien, la mesada es el remedio exclusivo para los empleados despedidos injustificadamente cuando no exista "alguna otra causa de acción al amparo de otras leyes que prohíban el despido y concedan otros remedios". *García v. Aljoma*, 162 D.P.R. 572, 597 (2004); *Porto y Siurano v. Bentlye P.R., Inc*. 132 D.P.R. 331 (1992). Véase también, Departamento del Trabajo y Recursos Humanos, *Guía Revisada para la Aplicación de la Ley Núm. 80 de 30 de mayo de 1976, enmendada,* 2000, pág. 49. Asimismo, hemos señalado que "[c]onceder una indemnización al amparo de dos (2) leyes distintas que tienen los mismos elementos, criterios y dependen de la misma prueba, penalizaría al patrono dos (2) veces por un solo acto". *Belk v. Martínez,* 146 D.P.R. 215, 241 (1998); *S.L.G. Afanador v. Roger Electric Co., Inc.,* 156 D.P.R. 651 (2002).

Teniendo presente la normativa antes señalada sobre despido injustificado, en el caso de autos nos corresponde examinar si es acreditable una indemnización por años de servicio o cesantía al pago de una mesada. Esto, en momentos en que este tipo de práctica no había sido atendida en nuestro ordenamiento y previo a que este Tribunal adjudicara que el despido de los empleados por motivo del cierre de una de las plantas del patrono – al no

reubicar a los empleados cesanteados – fue uno sin justa causa. Tal examen nos exige indagar sobre la práctica de las indemnizaciones por años de servicio y cesantía, así como interpretar la Ley Núm. 80, *supra*, según ésta disponía al momento del despido. Al hacerlo, mantenemos presente que, "hay que atribuir siempre a la ley el sentido que mejor responda a la realización del resultado que por ella se quiere obtener". *García Comercial v. Srio. de Hacienda,* 80 D.P.R. 765, 774 (1958). Asimismo, a tenor con nuestra jurisprudencia, debemos interpretar la citada Ley Núm. 80 liberalmente, en favor de los derechos del trabajador debido a su carácter reparador. *Belk v. Martínez*, *supra*.

En Estados Unidos, frecuentemente los patronos ofrecen de forma voluntaria indemnizaciones por años de servicio o cesantía (conocidas en inglés como *severance pay*). Tales indemnizaciones han sido definidas como dinero (aparte del salario) pagado por el patrono a un empleado cesanteado. *Black´s Law Dictionary*, 9na ed., Minnesota, Ed. West Publishing Co., 2009, pág. 1498 (Traducción nuestra). En su mayoría, éstas son entregadas de forma voluntaria como ayuda económica al obrero en lo que éste consigue un nuevo trabajo. Véase, A. Mechele Dickerson, *Approving Employee Retention and Severance Programs: Judicial Discretion Run Amuck?*, 11 Am. Bankr. Inst. L. Rev. 93, 95 (2003). Además, entre las principales razones por las que los patronos dan

este tipo de indemnizaciones se encuentra el evitar los litigios futuros. *Black´s Law Dictionary*, *supra*.

Como expresáramos, en Puerto Rico esta práctica no contaba con ningún tipo de normativa hasta que recientemente fuera incorporada en nuestro ordenamiento mediante la Ley Núm. 278 de 15 de agosto de 2008. Esto, en reconocimiento de la práctica de diversas empresas en proceso de cierre de compartir la liquidación de sus bienes con los obreros lo que "facilita que los empleados cesanteados tengan mayores recursos disponibles para enfrentar su difícil situación de desempleo". Exposición de Motivos, Ley Núm. 278, *supra*. Mediante la Ley Núm. 278, *supra*, la Asamblea Legislativa optó por otorgarle a las indemnizaciones por años de servicio o cesantía igual trato contributivo que a la mesada. Art. 2 de la Ley Núm. 278, *supra*. Al así hacerlo, aclaró que "[e]stas cuantías en nada afectan el cómputo o derecho a reclamar la compensación y la indemnización progresiva, dispuesta en la sec.185a de este título". 29 L.P.R.A. sec. 185g.

Asimismo, en *Orsini García v. Secretario de Hacienda*, *supra*, este Tribunal tuvo la oportunidad de distinguir las diferencias conceptuales entre la mesada al amparo de la Ley Núm. 80, *supra*, las indemnizaciones por años de servicio o cesantía otorgados por el patrono a la luz de la Ley Núm. 278, *supra,* y las indemnizaciones condicionadas a un Acuerdo de Relevo. Aún cuando el referido caso analizaba

particularmente los Acuerdos de Relevo, en éste reconocimos que la mesada, así como la indemnización por años de servicio o cesantía "tienen la misma finalidad de reparar el daño que provoca la pérdida de un empleo. No obstante, se diferencian entre sí respecto al tipo de obligación por la cual el patrono tiene que responder". *Orsini García v. Secretario de Hacienda*, pág. 30.

No obstante, recalcamos que al momento de los hechos del caso de autos todavía la Asamblea Legislativa no se había pronunciado respecto a este tipo de indemnización, ni tampoco este Tribunal había tenido oportunidad de considerarlo. Por consiguiente, debemos limitarnos al ordenamiento existente al momento de los hechos. Art. 3 del Código Civil, 31 L.P.R.A. sec. 3.

Conforme reseñado, la indemnización por años de servicio o cesantía cumple con los mismos propósitos que la Asamblea Legislativa figuró para los empleados cesanteados mediante la mesada, particularmente, indemnizar el daño sufrido por el empleado al ser cesanteado y ofrecer una ayuda económica en lo que éste consigue un nuevo empleo.

En el caso de autos, Baxter expresó la voluntad de cumplir con los propósitos de la Ley Núm. 80, *supra*, y proveer una indemnización por cesantía calculada según ésta respecto a aquellos empleados que fueran cesanteados por el cierre de la planta: el sueldo correspondiente a un mes por concepto de indemnización y una indemnización progresiva

adicional equivalente a una semana por cada año de servicio.[10] A esta indemnización Baxter añadió un diez por ciento (10%) adicional. Posteriormente, durante el año 1997, ofreció un aumento en el cómputo de la indemnización, sujeto a la firma de un relevo, a todo aquel empleado cesanteado después del 19 de octubre de 1995. Esto ocurrió sólo a meses desde que la fórmula de la Ley Núm. 80, *supra*, fuera enmendada mediante la Ley Núm. 234 de 17 de septiembre de 1996.[11]

El pronto desembolso de la indemnización, previo al comienzo del pleito, promueve la política pública que inspira la Ley Núm. 80, *supra,* porque proporciona la tan necesitada ayuda tan pronto el empleado ha sido cesanteado. En el presente caso, Baxter reconoció el carácter indemnizatorio de las sumas a entregarse sin aceptar la falta de justificación del despido. Esto último no es

---

[10] 29 L.P.R.A. sec. 185a (1995).

[11] Conforme el Boletín Informativo Núm. 13 de 24 de octubre de 1996, Baxter informó lo siguiente:

> "La ayuda económica de un (1) mes, una semana por [c]ada año de servicio y un 10% del total continuará. El gobierno de Puerto Rico enmendó la Ley 80 (Ley de Mesada). La Ley 80 es para penalizar al patrono cuando despide injustamente (ilegalmente) al trabajador. Como les he indicado en el pasado, un cierre de Planta por razones de reestructuración económico es legal y por lo tanto por ley no tiene que indemnizar a sus trabajadores. Baxter aunque por ley no tiene que indemnizar a sus empleados, decidió hacerlo de manera voluntaria. Estará pagando una ayuda (mesada) de más de ocho millones de dólares". Petición de *Certiorari*, Apéndice 11, pág. 130

A mediados de 1997, Baxter aumentó la indemnización un 48% sujeto a la firma de un relevo y aplicable exclusivamente a empleados que fueron elegibles a la indemnización por cierre, "o sea todo empleado que recibió mesada en o después del 19 de octubre de 1995". *Íd.*, págs. 133 y 137.

necesario para  considerar una indemnización por años de servicio o cesantía como mesada.

Visto en ese contexto, la indemnización voluntaria proveía mayor beneficio al empleado puesto que éste contaba con gran parte de la indemnización a la que tenía derecho en caso de que en su día recayera sentencia declarando el despido injustificado.  De otra forma, hubiese tenido que esperar a que culminara el procedimiento judicial y, por consiguiente, sufrir ciertas dificultades económicas, entre otros apuros, durante la espera.

Por lo tanto, concluimos que el reconocimiento de la acreditación de la indemnización por años de servicio o cesantía cumple con los propósitos reparadores de la mesada y promueve, a su vez, la continuación de este tipo de conducta por parte de los patronos que de otra manera, simplemente esperarían a que recaiga la correspondiente determinación judicial.[12]  Además, concluir lo contrario representaría una doble compensación por parte del patrono por los mismos daños.

Reconocemos que el despido o separación involuntaria del empleo es un evento inquietante en la vida del empleado y su familia.  En Puerto Rico, el Estado ha decidido

---

[12] No podemos perder de vista que tanto al momento de tomar la decisión de cierre como al momento de despedir a los recurridos este Tribunal no se había expresado sobre la falta de justificación del despido por el cierre de una planta ni la Asamblea Legislativa se había legislado al respecto. El patrono, a su vez, desconocía sobre la situación jurídica en nuestro ordenamiento de una indemnización por años de servicio o cesantía y los Acuerdos de Relevo entre patrono y empleados.  El patrono no podía prever la futura aprobación de este Tribunal respecto a este último tipo de acuerdo.

proteger mediante la mesada al empleado que se encuentra en una posición de desventaja en relación con el patrono, pero de igual forma, el patrono no debe ser obligado a pagar nuevamente o por encima tal indemnización porque en principio la pagara de forma voluntaria. En vista de ello, concluimos que la acreditación de una indemnización por años de servicio o cesantía dada por el patrono con anterioridad a la vigencia de la Ley Núm. 278, *supra*, cuyo objetivo era el mismo de la mesada, sirve de beneficio al empleado. Sin embargo, por ésta ser insuficiente para cubrir la totalidad de la mesada correspondiente al momento del despido y ésta ser irrenunciable por el empleado, solamente provee un crédito a Baxter. Por consiguiente, los empleados tienen derecho a toda otra suma adeudada en concepto de mesada.

**IV**

Baxter alega que el Tribunal de Apelaciones incidió al imponer el pago de intereses legales antes de que existiese una Sentencia ejecutable en la que se hubiese fijado la cuantía y en la que constara el tipo de interés, pues el asunto de la cuantía había quedado expresamente postergado para una vista evidenciaria.

Por su parte, los recurridos expresan que el pago de los intereses es mandatorio desde que se dicta la Sentencia por lo que si Baxter quería evitarlos debió haber consignado la parte de la indemnización que reconocía.

Aunque ciertamente la Sentencia del 28 de abril de 2003 no especificó la cuantía a pagarse en concepto de mesada a cada empleado cesanteado, si reconoció el derecho de los empleados a recibir una mesada conforme a la Ley Núm. 80, *supra*. La citada Ley Núm. 80 provee una fórmula que permite, de no haber otro tipo de controversia respecto a la indemnización, determinar fácilmente la cuantía en cuestión.[13]

Respecto a la fijación del interés legal, la Regla 44.3 de Procedimiento Civil expresa, en lo pertinente, que:

> Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia. 32 L.P.R.A. Ap. III R. 44.3(a).

Conforme expresamos en *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467, 470 (1982), "es mandatorio el que un tribunal, al dictar una sentencia en que ordene el pago de dinero, imponga el pago de interés al tipo legal sobre la cuantía de la sentencia sin excepción de clase alguna". No obstante, los "intereses forman parte integrante de la

---

[13] Véase, M. Albaladejo, *Derecho Civil: Derecho de Obligaciones*, 8va ed. Ed. Bosch, 1989, Vol. I, pág. 91. ["[U]na cosa es que la cuantía no esté fijada numéricamente, y otra que, estándolo, no se haya aún expresado el total de la misma, por ser necesaria todavía una simple operación aritmética, es indudable que también son líquidas aquellas deudas la expresión cuyo montante sólo depende de tal operación".]

sentencia que se dicte y […] pueden ser recobrados aun cuando no se mencionen en la misma". *Íd*. pág. 471, esc. 6.

Baxter solamente disputó la indemnización de noventa y ocho (98) empleados, ya sea por el crédito que alegaba tener o por no reconocerlos como demandantes. Respecto a los demás doscientos nueve (209) demandantes, Baxter no cuestionó la indemnización correspondiente. Por lo tanto, no erró el Tribunal de Apelaciones al sostener que precedía el pago de intereses de la mesada de los doscientos nueve (209) empleados, cuyas cuantías no están en disputa, a computarse desde el momento que se dictó la Sentencia Sumaria Parcial. No así respecto a aquellas mesadas sobre las cuales existe una controversia *bona fide*.

V

De conformidad con lo anterior, reconsideramos nuestra Sentencia del 9 de marzo de 2009 y revocamos en parte el dictamen del Tribunal de Apelaciones ya que procede la acreditación de la indemnización por cesantía desembolsada por Baxter a la indemnización correspondiente en concepto de mesada. Por otro lado, confirmamos en parte la Sentencia recurrida en cuanto al pago de intereses de la mesada. Se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos de conformidad con la presente determinación.

Se dictará Sentencia de conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mildred Vélez Cortés, et al

    Demandantes-Recurridos

*Certiorari*

        v.

Baxter Healthcare Corp. of          CC-2008-394
Puerto Rico, et al

    Demandados-Peticionarios

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

**SENTENCIA**
**(En reconsideración)**

San Juan, Puerto Rico, a 1 de julio de 2010.

De conformidad con la Opinión que antecede, reconsideramos nuestra Sentencia del 9 de marzo de 2009 y revocamos en parte el dictamen del Tribunal de Apelaciones ya que procede la acreditación de la indemnización por cesantía desembolsada por Baxter a la indemnización correspondiente en concepto de mesada. Por otro lado, confirmamos en parte la Sentencia recurrida en cuanto al pago de intereses de la mesada. Se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos de conformidad con la presente determinación.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emite Opinión de Conformidad. La Jueza Asociada señora Fiol Matta disiente sin opinión escrita.

                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mildred Vélez Cortés, *et als.*<br><br>Demandantes–Recurridos<br><br>v.<br><br>Baxter Healthcare Corporation of Puerto Rico, Inc., *et al.*<br><br>Demandados–Peticionario | CC-2008-394 |

Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 1 de julio 2010

El caso de referencia ha tenido una trayectoria tortuosa no tan solo ante los foros de instancia donde se está litigando hace once años, sino también ante este Tribunal. *E.g.*, *Vélez Cortés v. Baxter*, 166 DPR 475; *Vélez Cortés v. Baxter*, res. 9 de marzo de 2009, 175 DPR \_\_\_\_, 2009 TSPR 45. Hoy, un año después de nuestro más reciente dictamen, el Tribunal lo reconsidera.[14] Por los fundamentos que expresé en mi opinión disidente en este caso en marzo

---

[14] El 9 de marzo de 2009 este Tribunal dictó una Sentencia en el caso de epígrafe en la cual confirmó al Tribunal de Apelaciones por encontrarse igualmente dividido el Tribunal. El foro apelativo intermedio había resuelto que la compensación voluntaria que le había concedido Baxter a los empleados cesanteados de su planta en Carolina, no podía acreditarse al pago de la mesada bajo la Ley 80 de 30 de mayo de 1976, según enmendada, que se le ordenó pagarse. En aquella ocasión, la Jueza Asociada señora Fiol Matta emitió una opinión de conformidad a la que se unió el Juez Asociado señor Rivera Pérez y la Juez Asociada señora Rodríguez Rodríguez emitió una opinión disidente a la que se unió el Juez Presidente señor Hernández Denton. Véase, *Vélez Cortés v. Baxter*, res. 9 de marzo de 2009, 175 DPR \_\_\_\_, 2009 TSPR 45.

de 2009, procede reconsiderar nuestra sentencia confirmatoria. En su lugar, debemos revocar al Tribunal de Apelaciones que dictaminó que la compensación voluntaria que la peticionaria Baxter Healthcare Corp. le había concedido a los empleados que laboraron en su planta de Carolina no podía acreditarse el pago que ésta tiene que hacerles por concepto de mesada bajo la Ley núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a ss (Ley 80). Véase, *Vélez Cortés v. Baxter*, res. 9 de marzo de 2009, 175 DPR ____, 2009 TSPR 45. Por el contrario, respecto al cómputo de los intereses efectuado por el foro apelativo, procede confirmar el dictamen apelativo. *Íd.*

Al reconsiderar su posición anterior, el Tribunal hace suyo el razonamiento de la opinión disidente de 9 de marzo de 2009, aunque sin referirse a éste. En consideración a ello, reproduzco íntegramente nuestras expresiones anteriores:

**[I]**

La Ley 80 "le brinda a los trabajadores que han sido despedidos sin justa causa, la oportunidad de disfrutar de **una indemnización que les permita suplir sus necesidades básicas durante el tiempo que les pueda tomar conseguir un nuevo empleo.**" *Díaz Fontanez v. Wyndham*, 155 D.P.R. 364, 375 (2001). (Énfasis nuestro.)

El Artículo 1 de la Ley 80 dispone que todo empleado que trabaja mediante remuneración de alguna clase, contratado por tiempo indeterminado

que es despedido de su cargo sin que haya mediado justa causa, tiene derecho a recibir de su patrono "en adición al sueldo que hubiere devengado: (a) el sueldo **correspondiente a un mes por concepto de indemnización; (b) una indemnización progresiva adicional** equivalente a una semana por cada año de servicio." (Énfasis nuestro.)   29 L.P.R.A. §185a. Como vemos, la compensación a la que tiene derecho todo empleado está descrita en la ley como una **"indemnización."** Siendo así, su objetivo es "resarcir los daños sufridos a consecuencia del despido.   Esta indemnización no equivale a una remuneración o salarios por los servicios prestados ni constituye un sustituto del sueldo." *Alvira v. SK & F Laboratories Co.*, 145 D.P.R. 803, 810 (1997).   Su propósito es, como ya apuntamos, ayudar a "suplir [las] … necesidades básicas [del empleado cesanteado] durante el tiempo que tome conseguir un nuevo empleo." *Díaz Fontanez v. Wyndham, supra.*

En *Alvira, ante*, reconocimos que este tipo de protección que la ley le brinda a los empleados y obreros de nuestro país es "único." L.K. Larson, *Unjust Dismissal*, vol. 3, Mathew Bender, sec. 10.40[1][a], (2007)("Puerto Rico is unique in having legislation providing compensation for any employee under an indefinite

term contract who is discharged without good cause.") En tal rigor, el tratadista Lex Larson comenta lo siguiente:

> Puerto Rico is unique in having legislation providing compensation for any employee under an indefinite term contract who is discharged without good cause.
>
> Puerto Rico has enacted what amounts to a mandatory severance pay statute. This law provides indemnity to employees under indefinite term contracts that are discharge without good cause. The indemnification consists of one month's salary and one week's salary for each year worked prior to discharge. Employees are further entitled to back pay due them, and any amounts already earned in commissions and pay for vacation time not taken due to work demands. Larson, *op. cit.*, vol. 1, sec. 9A.04[1], pág. 9A-53.

Por otro lado, dado el carácter reparador de la Ley 80, hemos reiterado que ésta deberá ser interpretada liberalmente a favor de los derechos del trabajador. *Belk Arce v. Martínez*, 146 D.P.R. 215 (1998). Ello no obstante, también hemos destacado que es injusto penalizar a un patrono dos veces por los mismos hechos. *Afanador Irizarry v. Roger Electric,* 156 D.P.R. 651 (2002); *Belk Arce v. Martínez, ante.* A tales efectos, en *Belk Arce v. Martínez, ante,* pág. 241, indicamos:

> Como la Ley Núm. 100, *supra*, compensa por los daños sufridos por el empleado,

estos daños incluyen remediar los mismos que la Ley Núm. 80, *supra*, indemniza. La Ley Núm. 100, *supra,* compensa adecuadamente todos los daños que sufre el empleado despedido. **Conceder una indemnización al amparo de dos (2) leyes distintas que tienen los mismos elementos, criterios y dependen de la misma prueba, penalizaría al patrono dos (2) veces por un solo acto.** (Énfasis nuestro.)

En *Afanador Irizarry v. Roger Electric, ante*, pág. 667 nos reiteramos en esta norma, y señalamos que "si un demandante presenta una causa de acción contra su patrono por despido injustificado y discriminatorio, de determinar el tribunal que el despido más que injustificado, fue en efecto discriminatorio, no se concederá una indemnización bajo las dos leyes en cuestión,… **pues ello constituiría una doble penalización motivada por unos mismos hechos."** (Énfasis nuestro.) De modo que hemos resuelto que no procede conceder una doble indemnización a un empleado despedido sin justa causa, cuando las reclamaciones instadas bajo distintos estatutos tienen los mismos elementos y criterios, se basan en unos mismos hechos y dependen de la misma prueba, pues ello supondría una doble penalidad para el patrono y una doble indemnización para el empleado.

Por otro parte, hemos expresado en innumerables ocasiones que la compensación que

establece la ley, conocida como la mesada, es el remedio exclusivo ante el despido injustificado. *Afanador Irizarry v. Roger Electric*, 156 D.P.R. 651 (2002); *Díaz Fontanez v. Wyndham, ante*; *Vélez Rodríguez v. Pueblo International*, 135 D.P.R. 500 (1994).

Expuesta la doctrina general, pasemos a aplicar la misma a la controversia que hoy pende ante nuestra atención.

## [II]

### A

En su recurso, Baxter arguye que incidió el Tribunal de Apelaciones al no acreditar a la mesada las cuantías ya pagadas a la fecha de la cesantía de los empleados. En apoyo a su posición esgrime variados argumentos. Principalmente, aduce que ordenar el pago de la mesada sin acreditar lo ya pagado a los empleados tiene el efecto de penalizar doblemente al patrono por unos mismos hechos lo que hemos rechazado en el pasado. *E.g., Belk Arce v. Martínez, ante; Afanador Irizarry v. Roger Electric, ante.* Indicó, que la compensación otorgada a los empleados a la fecha de su cesantía obedeció al interés del patrono de asegurar que estos contaran con los recursos económicos necesarios hasta obtener un nuevo empleo, es decir, que sirve el mismo propósito

que persigue la Ley 80. Apunta además, que la mesada provista por la Ley 80 es el único remedio disponible ante un despido injustificado, por lo que el no acreditar las cantidades ya pagadas al pago de la mesada que ordenamos, representa un remedio en exceso de lo que contempla la propia ley. Tiene razón Baxter cuando argumenta que de no acreditarse el pago ya hecho a lo que adeuda en concepto de mesada, conlleva su doble penalización por unos mismos hechos.

En este caso, la compensación voluntaria hecha por Baxter tiene todas las características del pago de mesada de la Ley 80 y se computa siguiendo los lineamientos de esta ley. Ya indicamos que Baxter en sus comunicaciones a sus empleados le describió el pago que haría como mesada y les informó también cómo lo calcularía. Fórmula que es similar a lo dispuesto en la Ley 80. Baxter calculó su pago a base de un mes de sueldo, una semana de sueldo por cada año de servicio, más el 10% de esa suma. La Ley 80 a su vez dispone, como ya adelantamos, que la mesada se paga a base del sueldo que hubiera recibido el empleado, el sueldo correspondiente a un mes y una indemnización adicional equivalente a una semana por cada año de servicio en el empleo. Se advierte de inmediato la gran similitud de la fórmula utilizada para el pago tanto de la mesada

de la Ley 80 y el pago efectuado por Baxter por terminación de empleo.

Además, el pago hecho por Baxter participa de las características de una indemnización tal y como ocurre con la mesada de la Ley 80. Baxter le indicó a sus empleados que este pago tenía como propósito **"ayudar al empleado en la transición al cierre de planta."** Boletín Informativo No. 16 de 20 de junio de 1997. En otras palabras, la compensación concedida participa de los caracteres de una indemnización pues tenía como propósito resarcir los daños que ocasionaba la pérdida de empleo por el cierre de la planta. Éste es precisamente el fin que persigue el pago de mesada que ordena la Ley 80 según resolvimos en *Alvira v. SK & F Laboratories Co.*, *ante.*

El hecho de que el pago haya sido voluntario o que se aseveraba que fue en agradecimiento a los años de servicio, no detracta de la naturaleza reparadora del pago efectuado. Con lo cual, los paralelos con la mesada que ordena la Ley 80 son evidentes. Somos del criterio que imponer el pago de nueva partida por un mismo concepto y basado en unos mismos hechos —el cierre de la planta de Carolina— es claramente una acción punitiva en contra del patrono que se revela, a nuestro juicio, irrazonable. No se

justifica que en esta ocasión nos desviemos de lo que ha sido nuestra trayectoria de, por un lado, proteger al obrero de prácticas inescrupulosas del patrono, pero a la misma vez, rechazar la penalización doble del patrono por unos mismos hechos y un mismo concepto.[15]

**B**

El Tribunal de Apelaciones y los recurridos rechazan el planteamiento de Baxter de que se le acredite al pago de la mesada bajo la Ley 80 los dineros ya pagados a los empleados cesanteados bajo el fundamento que este asunto fue ya adjudicado en la sentencia que dictamos en este caso el 30 de junio de 2005. No tienen razón.

Señalamos anteriormente que en el caso que se trajo ante nuestra consideración la única controversia que se adjudicó fue si el despido de los empleados de Baxter fue injustificado o no a tenor con lo dispuesto en la Ley 80. Contestamos esa pregunta en la afirmativa y devolvimos el caso para que se computara el pago de la mesada. No estaba ante nuestra consideración el asunto sobre el crédito por lo que no pudo haber sido objeto de nuestro dictamen.

---

[15] No podemos pasar por alto también que el legislador ya expresó su criterio de que el cierre total, temporero o parcial de las operaciones de una fábrica constituye justa causa para el despido a tenor con la Ley 80. Ley Núm. 95 de 30 de julio de 2007. No nos parece razonable, y por el contrario lo consideramos injusto, imponer en este caso una nueva penalidad por algo ya atendido por el legislador.

La expresión individual en reconsideración de tres jueces de este Tribunal sobre este asunto, no cambia la controversia en efecto resuelta en nuestra sentencia. No cabe hablar entonces de la doctrina de la ley del caso tal y como nos plantea la parte recurrida.

Y es que la única controversia que adjudicó el tribunal de primera instancia en su sentencia de 28 de abril de 2003, y que posteriormente revisamos, fue precisamente si hubo justa causa para el despido. Sobre el cómputo de la mesada, el foro primario le ordenó a las partes a reunirse para determinar su monto y les indicó que si no podía llegar a un acuerdo se celebraría una vista evidenciaria para determinar la cuantía. El planteamiento respecto los cómputos a hacer y qué créditos, si alguno, debían reconocerse, era un asunto por dilucidarse más tarde, como en efecto ocurrió.

Por otro lado, somos del criterio que si bien al contestar la primera demanda presentada en su contra Baxter no presentó la defensa afirmativa de pago, si incluyó la de aceptación del pago como finiquito o la doctrina de aceptación y pago, y en ésta se encuentra subsumida la doctrina del pago como defensa.

De otra parte, en varias de las demandas instadas con posterioridad a esa primera, Baxter

sí levantó esta defensa. Como ya relatamos al inicio, todos los casos fueron posteriormente consolidados. En atención a lo anterior, somos del criterio que en efecto se encuentra válidamente ante nuestra atención la contención de Baxter respecto el pago hecho ya a los empleados cesanteados y su planteamiento de que se le acredite al pago de mesada ordenado.

### III

Por último, Baxter alega que resulta improcedente la imposición de intereses cuando el tribunal nunca ha fijado las cuantías adeudadas a los demandantes ni consta en la sentencia el tipo de interés a pagarse. Por lo que, ausente una determinación sobre una suma líquida, no existe obligación alguna de pagar intereses retroactivos a la fecha de la sentencia parcial enmendada. No tiene razón.

La Regla 44.3 de Procedimiento Civil, dispone que "[s]e incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que está en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha…." 32 L.P.R.A. Ap. III, R. 44.3. El

texto citado es claro al hacer mandatario que un tribunal, al dictar sentencia en la que ordena la entrega de dinero, imponga el pago de interés al tipo legal sobre la cuantía de la sentencia, sin excepción de clase alguna. *Gutiérrez v. AAA*, res. 10 de febrero de 2006, 166 DPR ___, 2006 TSPR 30.

En el caso ante nuestra consideración no se ha fijado el monto final de la cuantía que Baxter adeuda a los empleados demandantes. Ello no obstante, sí se había ordenado desde el 28 de abril de 2003, el pago de la mesada y este es un cómputo que se hace a base de la fórmula que se establece en la propia la Ley 80. Lo que restaba entonces era el cálculo matemático a base de una fórmula pre establecida. El mandato de pagar ya estaba vigente.

En vista de ello, tiene razón el foro apelativo cuando concluye que procede el pago de intereses desde que se dictó sentencia parcial (28 de abril de 2003) sobre las mesadas de los 209 empleados **sobre las que no hay controversia.** Sobre los demás casos donde hay disputas sobre las mesadas, los cuales requieren la celebración de una vista evidenciaria para su fijación, no procedería el pago de intereses a partir del 28 de abril de 2003, sino más bien desde la fecha en

que finalmente se determine la cuantía de la mesada.

## IV

Por los fundamentos expuestos en la opinión disidente de marzo 2009, estoy conteste con el curso de acción en este caso. Sólo lamento que haya tenido que transcurrir un año para que prevaleciera lo que considero es la postura más correcta.


Anabelle Rodríguez Rodríguez
Juez Asociada